**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FT. MYERS DIVISION**

ROSE C. SOUTO,

        Plaintiff,

v.                                                              Case No:  2:17-cv-124-FtM-38CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

**REPORT AND RECOMMENDATION**[1]

Plaintiff Rose C. Souto seeks judicial review of the denial of her claims for disability and disability insurance benefits ("DIB") by the Commissioner of the Social Security Administration ("Commissioner").   The Court has reviewed the record, the Joint Memorandum (Doc. 20),[2] and the applicable law.   For the reasons discussed herein, the Court recommends the decision of the Commissioner be affirmed.

---

[1] A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

[2] Disclaimer:   Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.   These hyperlinks are provided only for users' convenience.   Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.   By allowing hyperlinks to other Web sites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the Court has no agreements with any of these third parties or their Web sites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

## I.     Issues on Appeal[3]

Plaintiff raises four issues on appeal: (1) whether substantial evidence supports the administrative law judge's ("ALJ") finding that Plaintiff could perform her past relevant work as generally performed; (2) whether the ALJ properly classified Plaintiff's past relevant work as a warehouse worker as unskilled; (3) whether the ALJ's finding that Plaintiff could perform past relevant work conflicts with her finding that Plaintiff could not work around hazards; and (4) whether the ALJ properly considered the side effects of Plaintiff's medications and her multiple sclerosis ("MS").

## II.    Procedural History and Summary of the ALJ's Decision

On October 21, 2013, Plaintiff filed an application for DIB, alleging her disability began August 20, 2007, due to partial blindness in her left eye, Sjogren's disease, Grave's disease, joint pain, fatigue, headaches, and numbness in her hands and left leg.   Tr. 91–92, 214–17.   Plaintiff's DIB claim was denied initially and upon reconsideration.   Tr. 120, 136, 148.   On July 15, 2014, Plaintiff requested a hearing before an ALJ.   Tr. 153.   ALJ Yvette N. Diamond held a hearing on September 21, 2015, during which Plaintiff and vocational expert ("VE") Donna Bardsley testified. Tr. 51–90.   At the hearing, Plaintiff amended her onset date to January 1, 2012.

---

[3] Any issue not raised by Plaintiff on appeal is deemed to be waived.   *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

Tr. 54.   On December 30, 2015, the ALJ found Plaintiff not disabled from January 1, 2012 through December 31, 2014, the date last insured.   Tr. 120–30.

At step one, the ALJ found Plaintiff "last met the insured status requirements of the Social Security Act through December 31, 2014."   Tr. 122.   The ALJ determined Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of January 1, 2012, through the date she was last insured, December 31, 2014.   *Id.*   Next, the ALJ found that, through the date last insured, Plaintiff had severe impairments of Sjogren's syndrome, MS, optic neuritis, degenerative disc disease, and hypertension.   *Id.*

The ALJ then concluded Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" through the date last insured   Tr. 125.   The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work[4] with certain limitations, including that she "has a limited left field of vision and cannot have any exposure to hazards."   *Id.*   Next, the ALJ found Plaintiff was capable of performing her past relevant work as a caregiver or a warehouse worker.   Tr. 129.   As a result, the ALJ found that Plaintiff was not under a disability at any time from the alleged onset date through the date last insured.   Tr. 130.

---

[4] The regulations define medium work as work that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."   20 C.F.R. § 404.1567(c).

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on February 2, 2017.   Tr. 1.   Accordingly, the December 30, 2015 decision is the final decision of the Commissioner.   Plaintiff filed an appeal with this Court on March 1, 2017.   Doc. 1.   The matter is now ripe for review.

### III.   Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.   *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971)).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).[5]   Substantial evidence is "more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion."   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted).

The Eleventh Circuit has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings."   *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) (citation

---

[5] After the ALJ issued the decision, certain Social Security rulings and regulations were amended, such as the regulations concerning the evaluation of medical opinions and evaluation of mental impairments.   *See e.g.*, 20 C.F.R. §§ 404.1520a, 404.1520c, 404.1527 (effective March 27, 2017).   The Court will apply rules and regulations in effect at the time of the ALJ's decision.   *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); 20 C.F.R. § 404.1527 (effective March 27, 2017) ("For claims filed . . . before March 27, 2017, the rules in this section apply.").

omitted).   Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact or found that the preponderance of the evidence is against the Commissioner's decision.   *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).   The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

IV.   **Discussion**

a.   *Past relevant work*

Past relevant work is work a claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [her] to learn to do it."   20 C.F.R. § 404.1560(b)(1).   At the fourth step, the claimant bears the burden of demonstrating that she cannot return to her past relevant work.   *Battle v. Astrue*, 243 F. App'x 514, 522 (11th Cir. 2007) (citing *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990)).   She must show that she can no longer perform her past relevant work either as she actually performed it or as it is performed in the general economy.   *Waldrop v. Comm'r of Soc. Sec.*, 379 F. App'x 948, 953 (11th Cir. 2010) (citing *Jackson v. Bowen*, 801 F.2d 1291, 1293-94 (11th Cir.1986)).   Four factors guide the Commissioner in determining whether a claimant has met this

burden: "1) objective medical facts and clinical findings; 2) diagnoses of examining physicians; 3) subjective evidence of pain and disability, i.e. the testimony of the claimant and his family or friends; and 4) the claimant's age, education and work history." *Colon ex rel. Colon v. Astrue*, No. 8:08-CV-1191-T-17TEM, 2009 WL 2997187, at *2 (M.D. Fla. Sept. 18, 2009), *aff'd sub nom. Colon ex rel. Colon v. Comm'r of Soc. Sec.*, 411 F. App'x 236 (11th Cir. 2011) (citing *Tieniber v. Heckler,* 720 F.2d 1251 (11th Cir.1983)).

The ALJ assesses the claimant's RFC to determine whether the claimant can perform past relevant work despite her impairments. *See* 20 C.F.R. § 404.1520(f). The RFC is the most that a claimant can do despite her limitations. *See* 20 C.F.R. § 404.1545(a). To support a conclusion that the claimant is able to return to her past relevant work, the ALJ must consider all the duties of that work and evaluate the claimant's ability to perform them despite her impairments. *See Lucas,* 918 F.2d at 1574 n.3. An ALJ may consider a VE's opinion when making this determination. 20 C.F.R. § 404.1560(b)(2). The regulations provide that a VE "may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." *Id.* "In order for a [VE's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart,* 284 F.3d 1219, 1227 (11th Cir. 2002) (citation omitted). "The hypothetical need only include the claimant's impairments, not each and every symptom of the

claimant." *Ingram*, 496 F.3d at 1270 (citation and quotation marks omitted).   If any impairments were omitted, the omission is harmless if it would not have altered the VE's testimony.   *Williams v. Barnhart*, 140 F. App'x 932, 936 (11th Cir. 2005); *see also Diorio v. Heckler,* 721 F.2d 726, 728 (11th Cir.1983).

Plaintiff testified that she worked for Raytheon in the warehouse as a stock room operator or shipper, delivering materials from one section to another by wheeling a cart.   Tr. 60–62.   This position involved standing most of the day and loading and unloading around 30 to 40 pounds.   Tr. 62.   When Plaintiff moved from Massachusetts to Florida, she got a job providing home care for a woman who spent the winter season in Florida.   Tr. 62–63.   Plaintiff provided home care for her for five months each year for two years.   Tr. 63–64.   In this position, Plaintiff provided assistance bathing, dressing, going to medical appointments, going on other outings, and otherwise getting in and out of her wheelchair.   Tr. 64–66.

The VE testified Plaintiff's work as a caregiver was semiskilled with a specific vocational preparation ("SVP")[6] of 3 and generally performed at the medium exertional level under the Dictionary of Occupational Titles ("DOT") but actually performed by Plaintiff at the heavy exertional level.   Tr. 86.   She identified the warehouse worker as unskilled with an SVP of 2 and performed at the medium exertional level both under the DOT and as actually performed.   *Id.*   The VE testified that an individual with Plaintiff's age, educational background, work

---

[6] "The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2."   SSR 00–4p, 2000 WL 1898704 at *3.

experience and RFC could perform Plaintiff's past work.   *Id.* at 86–87.   As to the warehouse worker, the hypothetical individual could perform the job as classified by the DOT generally and as Plaintiff performed it.   *Id.* at 87.   Regarding the caregiver job, the hypothetical individual could perform it as classified but not as Plaintiff actually performed it.   *Id.*   Relying on the VE's testimony, the ALJ found that Plaintiff could perform the warehouse worker job generally and as performed and the caregiver job as it was generally performed.   Tr. 129.

> i.   *Whether substantial evidence supports the ALJ's finding that Plaintiff could perform her past relevant work given her fourth-grade education*

Plaintiff went to school in Portugal until at least the fourth grade.[7]   Tr. 58, 238.   She came to the United States at 15 and got married at 17.   Tr. 58.   Plaintiff argues the jobs of warehouse worker and caregiver require the ability to write, which Plaintiff does not have.   Doc. 20 at 12.   Plaintiff also argues that both jobs have general education (GED) levels that require greater than a fourth grade education, with a warehouse worker requiring a fourth to sixth grade education, and a caregiver requiring a seventh to eighth grade education.   *Id.* at 13.

The Commissioner responds the ALJ appropriately relied on the DOT and the VE to determine the mental and physical demands of Plaintiff's past relevant work and that she was still capable of performing it.   Doc. 20 at 15 (citing 20 C.F.R. §

---

[7] The record contains conflicting information, as Plaintiff appears also to have reported that she obtained a seventh to eighth grade education and graduated high school.   *Compare* Tr. 238 *with* Tr. 916, 922.   Her testimony also is unclear as to how far she went in school as she stated, "I just went to school in Portugal.   Four years."   Tr. 58.   For purposes of judicial review, the Court addresses Plaintiff's ability to perform her past relevant work based on the lowest level of education in the record she reported receiving.

404.1560; SSR 82-62, 1982 WL 31386).   The Commissioner argues that the ALJ asked the VE if her testimony was consistent with the DOT and was not required to inquire further once she got an affirmative response.   *Id.*   The Commissioner further argues if the ALJ had asked the VE about any conflict, the DOT indicates the warehouse worker position requires only simple writing, which is not inconsistent with Plaintiff's statements.   *Id.* at 16 (citing Tr. 58–59, 236).

The ALJ did not specifically address Plaintiff's ability to write in her decision. Tr. 120–130.   At the hearing, however, the ALJ questioned Plaintiff:

> Q:   Okay.   And are you able to read and write?
>
> A:   Not write.   I read a little bit, but not write because I never went to school.
>
> Q:   Can you write a grocery list?
>
> A:   Yeah. But I mean, write, write, I don't know how.   Just very simple.

Tr. 58.   Plaintiff did not testify as to any writing involved in the warehouse worker job.   Tr. 61–62.   According to the DOT, the writing required for the warehouse worker job is printing "simple sentences containing subject, verb, and object, and series of numbers, names, and addresses."   Dictionary of Occupational Titles (U.S. Dep't of Labor 4th ed. 1991) 922.687-058, 1991 WL 688132, at 2.   The writing requirement for the warehouse job as generally performed is consistent with Plaintiff's testimony that she could do simple writing.   Tr. 58.

Similarly, the warehouse worker job requires an education consistent with Plaintiff's level.[8]   The DOT explains that its GED scale:

> embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective.   Ordinarily, such education is obtained in elementary school, high school, or college.   However, it may be obtained from experience and self-study.

DOT App. C § III, 1991 WL 688702. Under the regulations, a fourth grade education is a marginal one, meaning "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs."   20 C.F.R. 404.1564(b)(2); *see also Williams,* 140 F. App'x at 936.   The warehouse worker job is unskilled and therefore consistent with Plaintiff's education level.   Tr. 86, 129.   Moreover, the ALJ was entitled to rely on Plaintiff's informal education through her job experience of roughly thirty-six years in the position to determine if Plaintiff could perform her past relevant work.   Tr. 922. Thus, the Court recommends the ALJ did not err in finding Plaintiff could perform the warehouse worker job as generally performed.

The writing requirement for a caretaker, however, appears to be more involved.   Under the DOT, it requires the following writing ability: "Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs."   DOT 354.377-014, 1991 WL 672933, at 2.   This job also is

---

[8] The Commissioner argues there was evidence in the record that Plaintiff had a seventh to eighth grade education, or even a high school education, and the ALJ was responsible for resolving conflicts in the evidence.   Doc. 20 at 17 (citing Tr. 916, 922). However, the ALJ did not state Plaintiff's level of education or otherwise resolve the conflict, Tr. 120–30, and the Court cannot make assumptions as to the ALJ's decision or reweigh the evidence where the ALJ's findings are not apparent from the record.   *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983).

semiskilled as generally performed.   Tr. 86, 129.   Under SSR 00-4p, "[w]hen a VE .

. . provides evidence about the requirements of a job or occupation, the adjudicator

has an affirmative responsibility to ask about any possible conflict between that VE

or VS evidence and information provided in the DOT."   SSR 00-4p, 2000 WL

1898704, at *4 (Dec. 4, 2000).   If there is a conflict, the ALJ is to "obtain a reasonable

explanation for the apparent conflict."   *Id.*   If the ALJ asks the VE whether any

conflicts exist between the DOT and the VE's statements, and the VE responds in the

negative, "the ALJ is not required independently to identify whether there is any

inconsistency."   *Cousins v. Colvin*, No. 2:12-cv-505-FtM-29, 2013 WL 5278271, at *6

(M.D. Fla. Aug. 23, 2013), *report and recommendation adopted as modified*, No. 2:12-

cv-505-FtM-29DN, 2013 WL 5278483 (M.D. Fla. Sept. 18, 2013).

Here, the VE read the record and testified her testimony was consistent with

the DOT.   Tr. 85–86, 88.   The ALJ also made a finding that she had considered the

mental and physical demands of both jobs and found Plaintiff could perform them.

Tr. 129.   The DOT description of the duties is consistent with how Plaintiff actually

performed the caretaker job.[9]   However, the writing requirement appears to conflict

---

[9] The description reads:

Cares for elderly, convalescent, or handicapped persons in patient's home, performing any combination of following tasks:   Changes bed linens, washes and irons patient's laundry, and cleans patient's quarters.   Purchases, prepares, and serves food for patient and other members of family, following special prescribed diets.   Assists patients into and out of bed, automobile, or wheelchair, to lavatory, and up and down stairs.   Assists patient to dress, bathe, and groom self.   Massages patient and applies preparations and treatments, such as liniment or alcohol rubs and heat-lamp stimulation. Administers prescribed oral medications under written direction of physician or as directed by home care nurse.   Accompanies ambulatory patients outside home, serving as guide, companion, and aide.   Entertains patient, reads

with Plaintiff's abilities demonstrated in the record, and neither the ALJ nor Plaintiff's attorney elicited any testimony from the VE in that regard.   Tr. 83–89. Regardless, any error in finding Plaintiff could perform the caretaker job as generally performed is harmless because Plaintiff has not demonstrated she cannot perform the warehouse worker job as actually performed.   Therefore, even if the ALJ had erred in finding Plaintiff could not perform her past relevant work as a caretaker as generally performed, such error is harmless because it would not have changed the ALJ's ultimate decision.   *Hunter*, 808 F.3d at 822.   Plaintiff was not disabled so long as she could perform her work as actually performed.   *Colon ex. rel*, 411 F. App'x at 239.   Thus, the Court recommends the Commissioner's decision be affirmed as to this issue.

> ii.   *Whether substantial evidence supports the ALJ's finding that Plaintiff's past relevant work as a warehouse worker had an SVP of 2 and was unskilled.*

Plaintiff argues that her prior job as a warehouse worker must have been a skilled one because it earned her up to $46,000 per year.   Doc. 20 at 18.   Plaintiff argues the ALJ improperly classified the position as unskilled work with an SVP of 2.   *Id.* at 19.   Plaintiff argues the ALJ failed to sufficiently develop the record as to the actual duties of the warehouse worker job.   *Id.*   The Commissioner responds the

---

aloud, and plays cards or other games with patient.   Performs variety of miscellaneous duties as requested, such as obtaining household supplies and running errands. May maintain records of services performed and of apparent condition of patient. May visit several households to provide daily health care to patients.

DOT 354.377-014, 1991 WL 672933, at 2.

ALJ may rely on the DOT to determine the requirements of past relevant work, and in any event, Plaintiff testified as to the job's duties. *Id.* at 20. The Commissioner argues the ALJ properly classified Plaintiff's past relevant work, which was consistent with both the DOT and Plaintiff's testimony. *Id.* at 21.

The ALJ relied on the VE for the classification of Plaintiff's work. Tr. 129. After reviewing the record and listening to Plaintiff describe her past relevant work, the VE opined the warehouse worker job was unskilled, with an SVP of 2. Tr. 86. Plaintiff's testimony is consistent with the duties of a warehouse worker defined under the DOT, including performing any combination of tasks to receive, store, and distribute material, tools, equipment and products within establishments; reading schedules, orders or requisition forms to move items; and conveying materials from one area to another by hand, handtruck or electric handtruck. DOT 922.687-058, 1991 WL 688132, at 1. Plaintiff cites *Brownell v. Comm'r of Soc. Sec.*, No. 2:13-cv-173-FtM-DNF, 2014 WL 4809470 (M.D. Fla. Sept. 26, 2014), but that case is distinguishable. Doc. 20 at 19. There, the plaintiff's past relevant work conflicted with her RFC—she was required to sit for 8 hours in an 8 hour work day for the job but was limited in her RFC to sitting 6 hours in an 8 hour workday. *Brownell*, 2014 WL 4809470, at *6. Additionally, the ALJ in that case determined the plaintiff's past work for an insurance company processing insurance claims over the telephone using a computer qualified as an insurance clerk, but the DOT description involved primarily compiling records of insurance policies. *Id.*

Unlike *Brownell*, Plaintiff's description of her job duties does not conflict with the DOT for warehouse worker, nor does it conflict with Plaintiff's RFC. Plaintiff suggests that the ALJ should have investigated why she made so much money if the job only had an SVP level of 2, but she does not establish how she was unable to perform the job as she actually performed it. Thus, the Court recommends even if the ALJ should have conducted a more in-depth inquiry into the warehouse worker position, it would not have changed the ALJ's determination that Plaintiff could perform it as she had been for many years[10] prior to moving to Florida. Tr. 62–63, 922.

> iii.   *Whether the ALJ's conclusion that Plaintiff could perform her past relevant work is consistent with her RFC finding that Plaintiff could not work around hazards*

Plaintiff argues the ALJ found that she could not work around hazards but inconsistently concluded she could work as a caretaker, which could involve stairs or irons, and a warehouse worker, which could involve lifting up to 50 pounds. Doc. 20 at 22–23. Plaintiff argues if she were to have vision loss from headaches and disorientation, it would not be safe for her to hold elderly or handicapped individuals. *Id.* at 23. Plaintiff argues the ALJ's hypothetical to the VE was incomplete because it did not include disorientation due to headaches. *Id.* (citing Tr. 86–87). The Commissioner responds that neither job involves exposure to hazards as the DOT

---

[10] At the hearing, the ALJ limited the questioning of Plaintiff to her role as a warehouse worker beginning in 2000; however, Plaintiff indicated that she had worked for Raytheon prior to that date, and the record demonstrates she had that job for 36 years. Tr. 61, 922.

defines them, and the VE testified that hazards were not an issue with either job. *Id.* at 24.

The ALJ accounted for Plaintiff's headaches and vision loss in her RFC by finding Plaintiff could not work around hazards. T. 125–27. Although the ALJ omitted the hazard limitation from her first hypothetical to the VE, she specifically asked if hazards were an issue in either job, and the VE responded that they were not. Tr. 86–88. Under the DOT descriptions for both warehouse worker and caretaker, vibration, atmospheric conditions, moving mechanical parts, electric shock, high exposed places, radiation, explosives, toxic caustic chemicals or other environmental conditions are "Not Present – Activity or condition does not exist." DOT 922.687-058, 1991 WL 688132, at 4, DOT 354.377-014, 1991 WL 672933, at 4. Plaintiff does not cite any authority or evidence to support her contention that stairs or an iron would constitute a workplace hazard around which she was precluded from working. Doc. 20 at 22–23. Thus, the Court recommends the ALJ's finding Plaintiff could perform past relevant work is consistent with Plaintiff's RFC requiring hazard avoidance.

       *b. Whether the ALJ properly considered the side effects of Plaintiff's medications and her MS*[11]

Plaintiff argues the ALJ has a duty to develop the record to investigate the side effects of Plaintiff's medications. Doc. 20 at 25. She argues the record contains evidence of the side effects Plaintiff suffers, but the ALJ failed to consider them and instead misunderstood the "relapsing-remitting nature of the MS impairment." *Id.* at 26. Plaintiff contends the ALJ discounted the side effects because she did not attempt physical therapy to improve neurological functioning or functional mobility, but no physical therapy was prescribed by any doctor. *Id.* Plaintiff also argues that some of her medications made her confused and tired, but the ALJ did not address these side effects or investigate them further. *Id.* at 27.

The Commissioner responds that the ALJ considered the side effects of Plaintiff's medication, including her subjective complaints of malaise, when she assessed Plaintiff's credibility. *Id.* The Commissioner points out the ALJ elicited testimony concerning Plaintiff's medications, including that they caused her to feel fatigued and confused, and the ALJ noted Plaintiff's testimony that she could not tolerate medications and made complaints of malaise. *Id.* at 28. The ALJ discredited this testimony based on the medical record and the lack of corroboration,

---

[11] Plaintiff also argues in passing that the ALJ's failure to adequately consider her side effects negates the analysis of whether Plaintiff's impairments meet Listing 14.10. Doc. 20 at 26. The Court need not consider an issue Plaintiff did not meaningfully develop and therefore did not preserve for appeal. *See Atha v. Comm'r of Soc. Sec. Admin.*, 616 F. App'x 931, 934 n.3 (11th Cir. 2015) ("[A] party fails to adequately brief an issue when he does not plainly and prominently raise it, for instance by devoting a discrete section of his argument to those claims." (internal citation and quotation marks omitted)).

namely Plaintiff's limited treatment and wide range of regular activity.   *Id.* at 28–30.

An ALJ's duty to develop the record includes a duty to inquire into the effect of a claimant's prescribed medication on her ability to work because side effects themselves can be disabling.   *Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981).   The Eleventh Circuit, however, also has distinguished this duty as a heightened or special one for unrepresented claimants:

> With respect to an unrepresented claimant, the ALJ's obligation to develop the record becomes a special duty to "scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts," and to ensure with diligence that favorable and unfavorable facts are elicited. *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir.1997) (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981)). As a result, where an unrepresented claimant's hearing testimony raises a question as to the side-effects of medications, the ALJ has the special duty to elicit further testimony or otherwise make a finding in regard to such side-effects. *Cowart*, 662 F.2d at 735. *In contrast, where a represented claimant makes a similar statement, but does not otherwise allege that the side-effects contribute to the alleged disability, the ALJ does not err in failing "to inquire further into possible side[-]effects." Cherry v. Heckler*, 760 F.2d 1186, 1191 n. 7 (distinguishing *Cowart* ).

*Pilnick v. Comm'r of Soc. Sec. Admin.*, No. 07-11789, 2007 WL 3122168, at *1 (11th Cir. Oct. 26, 2007) (emphasis added).

Plaintiff testified briefly as to the side effects she suffered from her MS medications—that at times they cause fatigue and confusion.   Tr. 66–69.   Plaintiff's attorney did not elicit any additional testimony as to the disabling nature of her side effects.   Tr. 77–83.   Thus, the Court recommends the ALJ did not err in failing to make further inquiry into the side effects of Plaintiff's medications.

The Court also recommends the ALJ properly considered the side effects of the medications and Plaintiff's pain as caused by her MS.   The ALJ expressly noted the side effects of Plaintiff's medications in Plaintiff's medical records, but she discounted the effect of the medications and Plaintiff's pain on her ability to work based on other evidence in the record.   Tr. 128.   The ALJ explained:

> Factors outside the objective medical evidence also affect the credibility of claimant's allegations (SSR 96-7p).   The claimant's earnings records identify a consistent work history for many years preceding the alleged onset date (Exhibit 4D).   The claimant's treatment record also provides some support for the claimant's allegations.   The medical evidence suggests that the claimant had difficulty tolerating various neurological medications, limiting her ability to treat her multiple sclerosis (Exhibit 19F/11–12).   However, the record shows no attempts at physical therapy to improve neurological functioning or functional mobility. The claimant also indicated that she had no treatment for her pain aside from over-the-counter medications and ice packs (Exhibit 9E/2). Moreover, the claimant denied widespread joint pain in January 2014, suggesting that she did not experience those pains as consistently as alleged (Exhibit 20F/81).   The claimant also performed outside activities inconsistent with disability.   The claimant testified that she visited Boston on several occasions during the period at issue, and stated that she visited Portugal for a month in 2013.   Although the claimant indicated that she could not mop the floor, she stated in February 2014 that she could do the laundry (Exhibit 9E/2).   She testified that she continued to drive short distances and take pictures with a tablet, suggesting less visual difficulty than she alleges.   Moreover, the claimant explained that she showered and dressed independently, and prepared simple meals during [t]his period.   I thus find the claimant's allegations somewhat credible.

Tr. 128.   Earlier in her decision, the ALJ also noted Plaintiff's complaints of fatigue and thus limited her to only occasional climbing of stairs or ladders.   Tr. 129.   The ALJ noted the alleged symptoms of Plaintiff's MS—"chronic muscle pain and pressure in her head."   Tr. 126.   Because Plaintiff's headaches could cause disorientation, in addition to limited vision in her left eye, the ALJ excluded Plaintiff from working

around hazards.   Tr. 126–27.   Plaintiff does not suggest how her side effects were more disabling than recognized by the ALJ in determining her RFC, nor does she suggest how her MS, in the absence of any treating medications, further limited her RFC.[12]   Doc. 20 at 25–26.

The Court recommends substantial evidence supports the ALJ's finding that Plaintiff's symptoms, including the side effects, were not as severe as she claimed. The Eleventh Circuit long has recognized that "credibility determinations are the province of the ALJ."   *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)).   If the objective medical evidence does not confirm the severity of the alleged symptoms but indicates that the claimant's impairments could reasonably be expected to produce some degree of pain and other symptoms, the ALJ must evaluate the intensity and persistence of a claimant's alleged symptoms and their effect on the claimant's ability to work.   *See* 20 C.F.R. § 404.1529(c)(1); *Wilson*, 284 F.3d at 1225–26; *Foote*, 67 F.3d at 1561.   The ALJ compares the claimant's statements with the objective medical evidence, the claimant's daily activities, treatment and medications received, and other factors concerning limitations and restrictions the symptoms cause.   *See* 20 C.F.R. § 404.1529(c)(1).

"If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.   Failure to articulate the reasons for discrediting

---

[12] Plaintiff argues that the Copaxane injections she received to treat her MS affected her ability to stand; however, Plaintiff acknowledges she discontinued the Copaxane injections after only 2 months.   Doc. 20 at 25.

subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (internal citations omitted). "The question is not . . . whether the ALJ could have reasonably credited [a claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). "A clearly articulated credibility finding with supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562.

Although Plaintiff's records indicate that she did not tolerate the medications prescribed for MS, as the ALJ noted, they also demonstrate conservative treatment. Plaintiff testified she sees a doctor, Matthew J. Baker, M.D., for her MS every four months. Tr. 68. Her medical records demonstrate regular follow up visits for her MS every two to three months or so. Tr. 417, 420, 475, 478, 484, 490, 755, 760, 765, 771, 777, 786. Megan Rahmlow, M.D., stated in her treatment plan for Plaintiff:

> She prefers to stop copaxone for now given the injection site reactions. I think this is reasonable. We will gather further information before deciding on an alternative MS treatment, *if that is indicated*.

Tr. 894 (emphasis added). The record indicates Dr. Rahmlow would see Plaintiff after MRI testing within 8 weeks. *Id.*

In observing Plaintiff had not sought physical therapy, the ALJ may have been referring to Dr. Rahmlow's opinion and inferring that the referenced alternative treatment was physical therapy, which could have improved neurological functioning or functional mobility. Tr. 128. However, the Court cannot make that determination from the ALJ's decision. Nevertheless, aside from Plaintiff's failure

to try physical therapy, the overall conservative nature of her treatment in light of the side effects of her medication as well as her activities supports the ALJ's determination that Plaintiff's pain was not as severe or limiting as she alleges.

The ALJ also correctly noted that Plaintiff reported malaise, or feeling badly, sometimes, but not consistently. *Compare.* Tr. 476, 752, 757, 772, 779 (reporting malaise) *with* Tr. 418, 436, 442, 447, 454, 482, 488, 493, 499, 912 (reporting no malaise). Moreover, the records did not indicate that these feelings were related to Plaintiff's side effects or her MS, or the extent of her ability to work despite her symptoms. Based on the record, it was reasonable for the ALJ to conclude that the side effects of Plaintiff's MS medications as well as the MS itself were not disabling. Although there is some evidence in the record that suggests further limitations than the ALJ found, the question for the Court is whether substantial evidence supports the ALJ's findings, not whether the record could support a different one. *Parks v. Comm'r, Soc. Sec. Admin.*, 783 F. 3d 847, 850 (11th Cir. 2015); *see also Edwards*, 937 F.2d at 584 n.3; *Barnes*, 932 F.2d at 1358.

## III.  Conclusion

The Court recommends that the ALJ applied the proper standards, and substantial evidence supports her decision that Plaintiff was not disabled through the date last insured.

ACCORDINGLY, it is respectfully

**RECOMMENDED:**

1.    The decision of the Commissioner be **AFFIRMED.**

     2.     The Clerk of Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner and close the file.

     **DONE** and **ENTERED** in Fort Myers, Florida on this 12th day of July, 2018.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record